CHARLES ZENG, APPELLEE, v. IDA JACOBS ET AL., APPELLANTS.

FILED OCTOBER 2, 1917. No. 19471.

1. **Homestead: OCCUPANCY: ABANDONMENT.** While the occupancy of premises (the separate property of the wife) as a home is evidence of its homestead character, it is not conclusive, and, where such occupancy was temporary in character and has been long abandoned, and the evidence shows that the wife has never consented to its selection as a family homestead, the husband acquires no homestead right in it.

2. ———: **ABANDONMENT.** The temporary absence from the home for purposes of pleasure, health or business, intending to return to it when the reasons for removing no longer exist, does not amount to an abandonment of the homestead right therein.

3. ———: ———. But where, as in the instant case, the absence from the home (the wife's separate property) was for over 14 years, the family in the meantime occupying various other houses in the same town, and the husband for five years afterwards made no claim of homestead right to the occupant of the premises holding it under deed made by the wife before her death, and who was in the meantime putting valuable improvements upon it, no adequate reason being shown for such continued absence from the home and for failure to make claim of the homestead right, *held*, that such facts show an abandonment of the homestead by both husband and wife.

APPEAL from the district court for Cuming county: GUY T. GRAVES, JUDGE. *Reversed.*

*F. D. Hunker* and *A. M. Emley,* for appellants.

*J. H. Lindale* and *F. Dolezal, contra.*

CORNISH, J.

Action to establish right of homestead in lot 8, block 21, West Point, Nebraska, as the surviving husband of Caroline Zeng. The defendants, holders and occupants of the property under a deed from Caroline Zeng, deny that plaintiff ever acquired a homestead right in the property, and allege that if he did it was abandoned. The trial court found for plaintiff.

It appears that plaintiff and Caroline Zeng were married at West Point on September 19, 1891; that she was then the owner of the property, which has never exceeded in value the sum of $2,000; that on June 3, 1892, she conveyed the property to plaintiff for a consideration stated of $1,135, secured by mortgage; that on March 18, 1893, plaintiff reconveyed the property to her for a consideration stated of $1,135; that on July 25, 1893, she and plaintiff gave a deed of the property to John Forrer; that on February 6, 1894, the property was reconveyed to her; that on April 13, 1907, she conveyed the premises by warranty deed to Fred Budwig and others, her children. This deed was not signed or acknowledged by her husband. Afterwards her grantees conveyed to Fred Jacobs, husband of defendant Ida Jacobs. It further appears that the plain-

tiff and his wife lived on the premises for at least one year after they were married; plaintiff contending five or six years. It is probable that the occupation was for not more than two or three years at most. Afterwards, except during one year, when the husband was necessarily away from West Point, they occupied various houses in that town, finally a house known as the Hartwig house, until the fall of 1906, at which time plaintiff left his wife and lived at a separate place. She was then in her last sickness. On request of her daughter, then renting the property in controversy, she went to reside with her, where, soon after, she died. At the time of the marriage the wife had several children. None was born to this marriage. After the wife's death defendant Jacobs occupied the property as owner for over five years and put $700 or $800 of improvements upon it. No attempt was made upon the part of plaintiff to assert a homestead right or give Jacobs notice that he claimed such a right. The plaintiff's explanation of his failure to occupy the premises as a home from about 1893 to 1912 is that his wife's children were always making trouble; that he wished to get away from them; and that he and his wife left the premises, intending some day to go back. The explanation given by the other side is that plaintiff, when drinking and violent, would damage the property without paying the damages, and the wife wished to move for that and other reasons. The plaintiff's testimony would show that her children stayed at their home, without objection from him, about the same after moving as before. It appears that the plaintiff never at any time got along agreeably either with his wife or her children. Three times she began divorce suits against him; the last one pending at the time of her death. The evidence would indicate that after the reconveyance of the property to her by Forrer she never in any way consented to her husband's having a homestead right in the premises in dispute. She treated it exclusively as her own, collected the rents, and finally conveyed it by deed.

We are of opinion that the rule that the temporary quitting of the home for purposes of pleasure, health or business, intending to return to it, does not amount to an abandonment, will not apply in this case. The abandonment was more than temporary, and during the years that the wife and her children were away from the premises there was no intention of returning to it as their family home. The fact that upon her death plaintiff made no claim of homestead right at a time when defendant Jacobs was improving the property cannot be overcome by his evidence of his private intention to claim it, especially so in the absence of any adequate reason shown why there was no return to the home.

By section 3077, Rev. St. 1913, the husband's homestead right in the wife's separate property is made dependent upon her giving consent thereto. The evidence does not show that she ever gave such consent. The fact that they made this property their home for a time would be strong but not conclusive evidence of its homestead character during that period. We are of opinion that the evidence shows that the wife never did consent nor ever would have consented to the selection of this her separate property as a homestead, and in law it did not become such. *Klamp v. Klamp,* 58 Neb. 748.

The judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.